NOT FOR PUBLICATION                                    (Docket Nos. 10, 15, 17, 19, 28)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| _____ : | |
| HECTOR HUERTAS, : | |
| : | |
| Plaintiff, : | Civil No. 09-2604(RBK/JS) |
| : | |
| v. : | **OPINION** |
| : | |
| GALAXY ASSET MANAGEMENT, f/k/a, : | |
| GALAXY ASSET PURCHASING, : | |
| CAPITAL MANAGEMENT SERVICES, : | |
| L.P., ASSET MANAGEMENT : | |
| PROFESSIONALS, LLC, EXPERIAN : | |
| INFORMATION SOLUTIONS, LLC, : | |
| TRANSUNION, LLC, and APPLIED : | |
| CARD BANK, f/k/a CROSS COUNTRY : | |
| BANK, : | |
| : | |
| Defendants. : | |
| _____ : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon separate motions by Defendants Applied Card Bank and Asset Management Professionals (collectively, "Moving Defendants") to dismiss the Complaint of Plaintiff Hector Huertas ("Plaintiff" or "Mr. Huertas") and upon Plaintiff's motion for judgment on the pleadings and for sanctions as well as Plaintiff's motions to seal Exhibits B and B-1 filed in connection with the aforementioned motion. In addition to the Moving Defendants, the Complaint brings claims against Defendants Galaxy Asset Management, Capital Management Services, L.P., Experian Information Solutions, LLC, and TransUnion, LLC

1

(collectively, "Defendants") pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §

1681, et seq., the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., the

New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1, et seq., the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, et seq., and the common

law of New Jersey.[1]  For the reasons expressed below, the Court will grant the Moving

Defendants' motions to dismiss and deny Plaintiff's motions for judgment on the pleadings and

for sanctions as well as Plaintiff's motions to seal.  The Court will grant Plaintiff leave to amend

the Complaint consistent with this Opinion.

I.      **BACKGROUND**[2]

        Mr. Huertas incurred a credit card debt to Cross Country Bank (the "Debt").

Subsequently, Mr. Huertas initiated a Chapter 13 Bankruptcy action in the United States

Bankruptcy Court for the District of New Jersey.  Cross Country Bank never filed a proof of

claim with the Bankruptcy Court.  The Complaint does not allege the outcome of the bankruptcy

action.  Cross Country Bank is now known as Applied Card Bank ("ACB").

        ACB assigned the Debt to Galaxy Asset Purchasing ("Galaxy").  Galaxy engaged the

services of Capital Management Services, L.P. ("Capital") for purposes of collecting the Debt.

On August 30, 2008, Capital sent Mr. Huertas a letter seeking $1,655.12 to resolve the Debt.

Capital offered to settle the Debt with him for $993.07.  In a privacy notice attached to the letter,

Capital informed Mr. Huertas that Galaxy would be obtaining personal, non-public information

---

        [1]  On January 7, 2010, the Court dismissed TransUnion by way of stipulated dismissal
pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii).

        [2]  The facts in this section are drawn from the allegations in the Complaint.

about him from various sources, including consumer reporting agencies, as permitted by law.

According to Mr. Huertas, Galaxy then re-assigned the Debt to Asset Management Professionals, LLC ("AMP").  AMP proceeded to send Mr. Huertas a letter dated February 11, 2009 seeking payment of $1,743.01 to resolve the Debt.  AMP does not appear to have offered Mr. Huertas a settlement amount.  AMP's letter also included a privacy notice, warning Plaintiff that Galaxy would be accessing Mr. Huertas's private consumer credit reports.

On May 26, 2009, Plaintiff filed a Complaint against Defendants sounding in seven counts.  Count one alleges that Experian Information Solutions, LLC ("Experian") and TransUnion, LLC ("TransUnion") maintain a consumer credit report on Mr. Huertas and violated the FCRA by providing it to Galaxy, Capital, and AMP for a purpose not sanctioned by the FCRA, namely the collection of a "false" debt.  Count one also alleges that Galaxy and AMP violated the FCRA by obtaining Plaintiff's consumer credit report for the same non-sanctioned purpose.  Count two alleges that Experian and TransUnion violated the FCRA by failing to maintain reasonable procedures designed to avoid furnishing consumer credit reports for this non-sanctioned purpose.  Count three alleges that Galaxy, Capital, and AMP violated the FDCPA by attempting to collect the false debt.  Count four alleges that Galaxy, Capital, and AMP violated the FDCPA by failing to verify the legitimacy of the Debt once Mr. Huertas disputed it. Count five alleges that Defendants breached their duty of good faith and fair dealing by acting with ill motive and without any legitimate purpose.  Count six alleges that Defendants' attempt to collect the false debt violated the NJCFA.  Count seven alleges that Defendants violated RICO and committed wire and mail fraud by colluding to attempt to collect the false debt for the purpose of obtaining Mr. Huertas's personal information.

On July 10, 2009, ACB filed a motion to dismiss the Complaint.  On July 30, 2009, AMP similarly filed a motion to dismiss.  Plaintiff did not file an opposition brief to ACB's motion by the August 3, 2009 deadline.  On August 10, 2009, ACB filed a reply to its motion to dismiss asking the Court to treat its motion as unopposed and to dismiss Plaintiff's claims with prejudice. On August 12, 2009, Plaintiff filed a motion denominated "Plaintiff's motion for judgment on the pleadings and for sanctions in response to defendants' applied bank and asset management professionals motions to dismiss."  The following day, Plaintiff filed a motion to seal exhibit B to his motion, which contains his credit report and original debt collection records.  On August 24, 2009, Plaintiff filed a second motion to seal a newly filed exhibit B-1, which contains a copy of his credit report "acknowledged" by TransUnion.  On September 21, both AMP and ACB filed briefs in opposition to Plaintiff's motion and in further support of their respective motions to dismiss.  Accordingly, the matter is ripe for disposition.

## II.     STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted.  With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making this determination, a court must engage in a two-part analysis.  Ashcroft v.

4

Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11.  First, the court must

separate factual allegations from legal conclusions.  Iqbal, 129 S. Ct. at 1949.  "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice."  Id.  Second, the court must determine whether the factual allegations are sufficient to

show that the plaintiff has a "plausible claim for relief."  Id. at 1950.  Determining plausibility is

a "context-specific task" that requires the court to "draw on its judicial experience and common

sense."  Id.  A complaint cannot survive where a court can only infer that a claim is merely

possible rather than plausible.  See id.

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the

pleadings.  The movant under Rule 12(c) must show clearly that no material issue of fact exists

and that it is entitled to judgment as a matter of law.  Rosenau v. Uniford Corp., 539 F.3d 218,

221 (3d Cir. 2008) (citing Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290-91 (3d

Cir. 1988)).  In reviewing a Rule 12(c) motion, a court must view the facts in the pleadings and

the inferences therefrom in a light most favorable to the nonmovant.  Id.

## III.   DISCUSSION

### A.   The "False" Debt

The Complaint is predicated upon Mr. Huertas's belief that the Debt is "false."  The

Complaint alleges that the Debt is false because the applicable statute of limitations for bringing

a debt collection action has run.[3]  (See Complaint ¶¶ 34, 52, 56, 62, 74.)

Generally speaking, the running of a statute of limitations is considered to sever the

---

[3]  The Complaint alleges that the debt is time-barred by New Jersey and Pennsylvania
law.  (Compl. ¶ 52.)

remedy without eliminating the right.  See Osmundsen v. Todd Pacific Shipyard, 755 F.2d 730,

733 (9th Cir. 1985).  In Pennsylvania, a debt is not extinguished by virtue of the running of the

statute of limitations; rather, the statute merely operates to prevent judicial enforcement.  In re

Keeler, No. 08-14079, 2009 WL 2902740, at *9 (Bkrtcy. E.D. Pa. May 4, 2009); see

Commonwealth v. Cunningham, 10 A.2d 559, 563 (Pa. 1940) ("A debt, though barred by

limitation, is still a debt."); Woods v. Irwin, 21 A. 603 (Pa. 1891) ("A debt barred by the statute

of limitations is still a debt, though the remedy upon it be suspended or gone.").  The same

appears to be true in New Jersey.  See Green v. NCO Inovision, No. 09410, 2010 WL 147934, at

*3 (D.N.J. Jan. 11, 2010) (letter opinion) (citing Davis v. Miller, 194 U.S. 451, 456 (1904))

("While a statute of limitations may bar the use of judicial remedies to enforce a particular right,

it does not eliminate the underlying right."); Hollings v. Hollings, 73 A.2d 755, 757 (N.J. Super.

Ct. Ch. Div. 1950) (observing that the statute of limitations "is a bar to the remedy only, and does

not extinguish, or even impair, the obligation of the debtor").

　　　As a consequence, the factual allegations in the Complaint do not support the legal

conclusion that the Debt is false.  To the contrary, the Complaint's allegations support the legal

conclusion that Mr. Huertas owes the Debt, but that the Debt may not be judicially enforced.[4]

The Court will now proceed to determine whether the various counts of the Complaint state a

claim upon which relief may be granted notwithstanding the Complaint's faculty legal premise

that the running of the statute of limitation has extinguished the Debt.

----

[4]  To be clear, the Court takes no position on whether the statute of limitations for judicial enforcement of the debt has, in fact, run.  The Court simply assumes, for the sake of argument, that the applicable statute of limitations has run as this comports with the allegations contained in the Complaint.

B.      **Count One**

The FCRA prohibits any person from "knowingly and willfully obtain[ing] information on a consumer from a consumer reporting agency under false pretenses."  15 U.S.C. § 1681q. Apparently, the FCRA also prohibits users from willfully obtaining consumer reports[5] for an improper purpose.  See 15 U.S.C. § 1681n(a); Massachusetts Mut. v. Orenyo, No. 96-5234, 1998 WL 1297799, at *12 (D.N.J. July 24, 1998) (citing Daley v. Haddonfield Lumber, Inc., 943 F. Supp. 464, 466 (D.N.J. 1996) ("Although the explicit terms of [the FCRA] govern only the conduct of credit reporting agencies, courts have held that a user of an improperly obtained report may be liable to the consumer.").

"The standard for determining when a consumer report has been obtained under false pretenses will usually be defined in relation to the permissible purposes of consumer reports." Hansen v. Morgan, 582 F.2d 1214, 1219 (9th Cir. 1978); see Veno v. AT&T Corp., 297 F. Supp. 2d 379, 385 (D. Mass. Dec. 24, 2003) ("A court is to determine whether a request for a consumer report has been made under 'false pretenses' by looking at the permissible purposes for which consumer reports may be obtained. . . .").  The FCRA articulates an exhaustive list of legitimate

---

[5]   The FCRA defines a "consumer report" as:

> Any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for – (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1618b [of the FCRA].

15 U.S.C. § 1681a(d).

purposes.  See 15 U.S.C. § 1681b(a).  Relevant here, an agency may furnish a consumer report "to a person which it has reason to believe – intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the . . . review or collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A).  By way of corollary, it appears that a user may lawfully obtain a consumer report for use in connection with a credit transaction involving account collection or review.

Mr. Huertas argues that AMP violated the FCRA by obtaining his credit report without a proper purpose because AMP knew the debt was false and therefore uncollectible.  Moreover, Plaintiff argues that AMP obtained his credit report under false pretenses because it did not intend to use it for valid collection purposes, but rather intended "to deceive the Plaintiff to pay the unlawful debt."  (See Complaint ¶ 78.)  Such allegations do not state a claim against AMP. As noted, the running of the statute of limitations does not extinguish the Debt; it merely renders the Debt judicially unenforceable.  In other words, Mr. Huertas still owes the Debt.  As noted, the FCRA does not prohibit a person from obtaining a consumer report in connection with a credit transaction involving the collection of a debt.  As to Plaintiff's second theory of liability, it should go without saying that obtaining a credit report for the purpose of collecting a valid debt, and then using that report in connection with attempts to collect on that debt, does not qualify as obtaining a credit report under false pretenses.  Accordingly, the Court concludes that count one does not state a claim against AMP.  Count one does not allege wrongdoing on behalf of ACB.[6]

C.      **Count Two**

───────────────

[6]  ACB asks the Court to dismiss count one against it.  By its own terms, however, count one does not allege any wrongdoing against ACB.  The Court will not grant this request as doing so would be a nullity.

8

Count two alleges that Experian and TransUnion violated the FCRA.  Count two does not allege wrongdoing on behalf of the Moving Defendants.  Accordingly, the Court will not grant the Moving Defendants' motion to dismiss count two because the question of whether it states a claim is not before the Court.

### D.    Count Three

The FDCPA prohibits a debt collector from falsely representing "the character, amount, or legal status of any debt."  15 U.S.C. § 1692e(2)(A).

Count three alleges that Galaxy, Capital, and AMP violated the FDCPA by attempting to collect a false debt.  The Complaint does not allege that Galaxy, Capital, or AMP represented to Mr. Huertas that the debt was judicially enforceable or that any of these defendants threatened legal action against Mr. Huertas as a consequence of his failure to repay.  Because the Debt is not extinguished by operation of the statute of limitations, the debt-collector defendants' attempts to collect the Debt do not constitute a false representation.  See Ehsanuddin v. Wolpoff & Abramson, No. 06-708, 2007 WL 543052, at *4 n.1 (W.D. Pa. Feb. 16, 2007) ("It should be noted here that the fact that the limitations period during which a lawsuit may be brought has lapsed, does not mean that the debt itself has been extinguished or that a debt collector is precluded from using means, other than judicial means, to collect the debt."); Martsolf v. JBC Legal Group, P.C., No. 04-1346, 2008 WL 275719, at *4 (M.D. Pa. Jan. 30, 2008) (mem. op.) ("[A] debt collector may request voluntary repayment of the debt but may not threaten suit based upon it."); Green v. NCO Inovision, No. 09-410, 2010 WL 147934, at *3 (D.N.J. Jan. 11, 2010) (dismissing the plaintiff's FDCPA claim because "[t]here is no cause of action for attempting to collect an expired debt").  Accordingly, the Court concludes that count three does not state a

claim against AMP upon which relief may be granted.  Count three does not allege wrongdoing

on behalf of ACB.[7]

### E.     Count Four

If a consumer formally disputes a debt and properly notifies the debt collector, the

FDCPA requires the debt collector to:

> [C]ease collection of the debt . . . until the debt collector obtains verification of
> the debt or a copy of a judgment [against the consumer], or the name and address
> of the original creditor, and a copy of such verification or judgment, or name and
> address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b).

The Complaint alleges that Plaintiff disputed the Debt and that Galaxy, Capital, and AMP

failed to properly re-investigate the Debt once Plaintiff disputed it.  (Complaint ¶ 28.)  The

Complaint does not allege that Galaxy, Capital, or AMP failed to verify the debt.  The Complaint

does not allege that Galaxy, Capital, or AMP failed to mail Mr. Huertas such verification.  The

Complaint alleges only that Galaxy, Capital, and AMP failed to "properly re-investigate."  (Id.)

Given the dearth of specific factual allegations, the Court construes this statement – in harmony

with the Complaint's common theme – to allege that Galaxy, Capital, and AMP did not "properly

re-investigate" because they failed to recognize or acknowledge that the Debt was false and

uncollectible by virtue of the running of the applicable statute of limitations.  Because the alleged

running of the statute of limitations does not extinguish the Debt, AMP's alleged failure to verify

the Debt as uncollectible does not violate the FDCPA.  Accordingly, the Court concludes that

---

[7]  ACB asks the Court to dismiss count three against it.  By its own terms, however, count
three does not allege any wrongdoing against ACB.  The Court will not grant this request as
doing so would be a nullity.

count four does not state a claim against AMP upon which relief may be granted.  Count four does not allege wrongdoing against ACB.[8]

### F.    Count Five

New Jersey law implies a duty of good faith and fair dealing into every contractual relationship.  Wilson v. Amerada Hess Corp., 773 A.2d 1121, 1126 (N.J. 2001).

Count five alleges that Defendants breached the duty of good faith and fair dealing by acting with an ill motive and without any legitimate purpose.  (Complaint ¶ 29.)  Specifically, the Complaint alleges that ACB breached this duty by selling the Debt to Galaxy knowing that it was uncollectible.  Similarly, the Complaint alleges that AMP violated the duty by attempting to collect the allegedly uncollectible Debt.  Because the alleged running of the statute of limitations did not extinguish the Debt, neither ACB nor AMP violated the duty of good faith and fair dealing by selling, or attempting to collect, the Debt.[9]  Accordingly, the Court concludes that count five does not state a claim against ACB or ACB upon which relief may be granted.

### G.    Count Six

To state a claim under the NJCFA, a plaintiff must show (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss.  Deutsche Bank Nat. Trust Co. v.

---

[8]  ACB asks the Court to dismiss count four against it.  By its own terms, however, count four does not allege any wrongdoing against ACB.  The Court will not grant this request as doing so would be a nullity.

[9]  The Court assumes for the purposes of the instant argument that Plaintiff has pleaded the existence of a contractual relationship between himself and both ACB and AMP.  As AMP correctly observes, there can be no breach of the implied covenant of good faith and fair dealing in the absence of a contract.  See Noye v. Hoffman-La Roche, Inc., 570 A.2d 12, 14 (N.J. Super. Ct. App. Div. 1990).

Lacapria, No. 08-2174, 2010 WL 715617, at *5 (D.N.J. Mar. 1, 2010) (citing N.J. Citizen Action v. Schering-Plough Corp., 842 A.2d 174, 176 (N.J. Super Ct. App. Div. 2003)).

Count six alleges that Defendants violated the NJCFA.  Because the alleged running of the statute of limitations does not extinguish the Debt, Defendants' alleged debt collection activities, without more, do not rise to the level of unlawful conduct.  Accordingly, the Court concludes that count six does not state a claim against AMP or ACB upon which relief may be granted.

### H.  Count Seven

 Title 18 U.S.C. § 1962(c) prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).  Title U.S.C. § 1962(d) renders it unlawful for a person to conspire to do the same.  18 U.S.C. § 1962(d).

Count seven alleges that Defendants violated 18 U.S.C. § 1962(c) and (d) by conspiring to collect a false debt in an attempt to profit from the financial proceeds of the collection as well as from the access to Mr. Huertas's personal information such collection efforts afford.  Because the alleged running of the statute of limitations does not extinguish the Debt, count seven does not allege that Defendants engaged in the collection of an unlawful debt.  As a consequence, count seven does not state a claim against AMP and ACB upon which relief can be granted.

### I.  Leave to Amend

A complaint should not be dismissed with prejudice for failure to state a claim without granting leave to amend, unless the court finds bad faith, undue delay, prejudice, or futility.

Carter v. Fairbanks, No. 09-4032, 2009 WL 2843882, at *2 (D.N.J. Sept. 1, 2009) (citing

Grayson v. Mayview State Hosp., 293 F.3d 103, 110-11 (3d Cir. 2002); Shane v. Fauver, 213

F.3d 113, 117 (3d Cir. 2000)).

     As the foregoing analysis makes clear, Plaintiff simply cannot state a claim predicated

upon the theory that the Debt is uncollectible by virtue of the alleged running of the statute of

limitations.  A very liberal reading of the Complaint, however, suggests that Mr. Huertas further

believes that the Debt is false because he attempted to pay it during his bankruptcy filing.  (See

Complaint ¶¶ 58, 74.)  Although Mr. Huertas does little to expound upon this theory in his

Complaint, his moving papers make clear that Mr. Huertas believes that the Debt is uncollectible

as a consequence of previous bankruptcy proceedings.  (Pl.'s Br. at 8-10.)  If the Debt truly was

extinguished or otherwise rendered uncollectible as a consequence of the previous bankruptcy

proceedings, this would seem to provide a basis for Mr. Huertas's dismissed claims.  See, e.g., In

re Abate, No. 07-2953, 2008 WL 1776529, at *3 (D.N.J. Mar. 18, 2008) (quoting Kuhl v. United

States, 467 F.3d 145, 147 (2d Cir. 2006)) ("A discharge in bankruptcy operates as an injunction

against collection of any discharged debts.").[10]  Accordingly, the Court will grant Plaintiff leave

to amend the Complaint on this basis.[11]

---

    [10]  The Moving Defendants contest the notion that the Debt was discharged or otherwise
rendered uncollectible as a consequence of the previous bankruptcy proceeding.  In fact,
Defendants argue that Mr. Huertas's bankruptcy proceeding resulted in his claims being
dismissed, not discharged.  As the Court must accept the truth of all of the factual allegations in
the Complaint as true for the purposes of a motion to dismiss, the appropriate vehicle for such an
argument would be a motion for summary judgment.

    [11]  Mr. Huertas has clearly spent quite a bit of time and energy preparing and pursuing his
claims against Defendants in this matter.  Unfortunately, Mr. Huertas does not have the
assistance of learned counsel.  Perhaps as a consequence, the Complaint filed by Mr. Huertas –
although rife with legal conclusions – suffers from a dearth of factual allegations.  Because the

Plaintiff correctly observes that the FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, and that "the FDCPA is violated when a debt collector falsely represents the legal status of a debt," <u>Shorty v. Capital One Bank</u>, 90 F. Supp. 2d 1330, 1331 (D.N.M. 2000). Plaintiff asks the Court to grant him leave to amend his Complaint to reflect his belief that Galaxy, Capital, and/or AMP unlawfully pressured him to repay the Debt. Plaintiff's theory of unlawful pressure is that the privacy notices contained in the two debt collection letters Plaintiff received from Capital and AMP were intended as threats to deceive Mr. Huertas into paying the false Debt.

Given the Third Circuit's liberal position on amendments, the Court will grant Plaintiff's request for leave to amend his Complaint to reflect the above-described theory provided the Amended Complaint does not incorporate, or rely upon in any way, the theory rejected by the

---

Court has granted Mr. Huertas leave to amend the Complaint, the Court would like to take this opportunity, in the interest of justice and fairness to all parties, to make clear to Mr. Huertas what his Amended Complaint is expected to contain. Federal Rule of Civil Procedure 8 instructs that a complaint should contain, <u>inter alia</u>, "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, should Mr. Huertas decide to file an Amended Complaint, it should recite the <u>facts</u> upon which his claims are predicated. An Amended Complaint that merely recites legal conclusions is unlikely to survive further motions practice. For example, allegations as to what Mr. Huertas and Cross Country bank <u>did</u> or <u>did not do</u> in connection with the bankruptcy proceeding would constitute allegations of fact. Similarly, allegations that the bankruptcy court took certain legal actions and/or disposed of Plaintiff's case in a certain way would also constitute allegations of fact. On the other hand, statements by the Plaintiff as to the <u>legal effect</u> of any actions he or Cross Country Bank took or did not take, as well as statements by Plaintiff as to the <u>legal effect</u> of any decision or disposition of his bankruptcy petition by the bankruptcy court, without reference to the aforementioned facts, would constitute mere legal conclusion. Therefore, in addition to his legal assertion that the Debt is extinguished or otherwise rendered uncollectible, the Amended Complaint must provide his adversaries and the Court with enough facts to render this legal claims plausible.

Court today.[12]  Because the Court is granting Mr. Huertas leave to amend his Complaint to reflect

his theory that the Debt is false as a consequence of the bankruptcy proceeding, Defendants will

suffer no prejudice by responding to this additional claim, which the Court understands to be

related.  The Court cautions Mr. Huertas that it expects his Amended Complaint to be

comprehensive of the claims left available to him by this Opinion.  Although the Court finds that

granting Plaintiff leave to amend does not prejudice Defendants at present, this will not always

be the case.

### J.      Plaintiff's Motion for Judgment on the Pleadings and for Sanctions

As the Court has gone to great lengths to explain, the Complaint does not state claims

against Defendants because Mr. Huertas has not alleged facts supporting the legal conclusion that

the Debt has been extinguished.  Because he has not articulated a viable claim, he cannot show

that he is entitled to judgment as a matter of law.  Furthermore, Plaintiff's motion for sanctions is

predicated on his belief – not alleged in the Complaint – that Defendants have known all along

that the Debt was extinguished by operation of the prior bankruptcy proceeding.  Accordingly,

his motions for judgment as on the pleadings and for sanctions are inappropriate at this time.

### K.      Motions to Seal

Plaintiff has filed two motions to seal exhibits B and B-1 filed in connection with his

motion for judgment on the pleadings and for sanctions.  Defendants have not opposed Plaintiff's

motions to seal.

Local Civil Rule 5.3 governs requests to seal documents filed with the Court.  A party

---

[12]  Apart from finding that the proposed amendment is not necessarily futile, the Court
takes no position on the question of whether the Complaint, amended as Plaintiff suggests, will
state a viable claim

seeking to seal documents must describe (a) the nature of the materials at issue; (b) the legitimate

private or public interests which warrant the relief sought; (c) the clearly defined and serious

injury that would result if the relief sought is not granted; and (d) why a less restrictive

alternative to the relief sought is not available.  L.Civ.R. 5.3(c)(2).  The party seeking to seal

must also submit proposed findings of fact and conclusions of law.  Id.

Additionally, where a party moves to seal pretrial motions, and the materials filed in

connection therewith are of a "nondiscovery nature," the moving party must make a showing

sufficient to overcome a "presumptive right of public access."  Leucadia, Inc. v. Applied

Extrusion Technologies, Inc., 998 F.2d 157, 164 (3d Cir. 1993).  Because Exhibits B and B-1

were filed in connection with Plaintiff's motion for judgment on the pleadings, the presumption

in favor of public access applies.

To overcome this presumption, Plaintiff must demonstrate that "good cause" exists for

the protection of the material at issue.  Good cause exists when a party makes a particularized

showing that disclosure will cause a "clearly defined and serious injury to the party seeking

closure."  Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994) (citations omitted);

see Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995).  Good cause has not

been established where a party merely provides "broad allegations of harm, unsubstantiated by

specific examples or articulated reasoning."  Pansy, 23 F.3d at 786 (quoting Cipollone v. Liggett

Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986)).

Mr. Huertas's motion to seal does not directly address all of the four Rule 5.3 factors as

explicitly required by rule, nor does Mr. Huertas submit the required proposed findings of fact

and conclusions of law.  Of particular note, Mr. Huertas does not explain why a less restrictive

alternative is unavailable.  Although Mr. Huertas is proceeding pro se, this is not the first time he

has filed a deficient motion to seal in this matter.  See Huertas v. Galaxy Asset Management, 09-

2604, Docket No. 2 (D.N.J. Oct. 5, 2009) (order) (denying Plaintiff's motion to seal).

Accordingly, the Court will deny Mr. Huertas's motions to seal.

## IV.    CONCLUSION

For the reasons expressed above, the Court will grant ACB's motion to dismiss all counts

alleged against it (counts five, six, and seven).  Likewise, the Court will grant AMP's motion to

dismiss all counts alleged against it (counts one, three, four, five, six, and seven).[13]  Plaintiff's

motion for judgment on the pleadings and for sanctions will be denied.  Further, the Court will

grant Plaintiff leave to amend the Complaint within ten days to reflect Mr. Huertas's theory that

the Debt was extinguished or otherwise rendered uncollectible as a consequence of prior

bankruptcy proceedings.  Leave to amend for any other purpose is denied.  Finally, the Court will

deny Plaintiff's motions to seal Exhibits B and B-1.  An accompanying Order shall issue today.


Dated: 3-9-2010                                     /s/ Robert B. Kugler
                                                    ROBERT B. KUGLER
                                                    United States District Judge

---

[13]  Although the logic of the Court's opinion would seem to apply with equal force to the
Complaint's allegations lodged against Defendants Experian, Capital, and Galaxy, these
Defendants have not joined in the Moving Defendants' motions.  Accordingly, dismissal of these
allegations is not appropriate at this time.